ALAN W. WESTBROOK, ESQ.
Nevada Bar No. 6167
PERRY & SPANN
A Professional Corporation
1701 W. Charleston Blvd., #200
Las Vegas, Nevada 89102
Tel: (702) 870-2400
Fax:(702) 870-8220

OF COUNSEL:
Lucinda J. Bach, Esq.
Julie L. Schwartz, Esq.
DLA PIPER US, LLP
1200 Nineteenth Street, NW
Washington, DC 20036-2412
Tel: (202) 861-6256
Fax:(202) 689-7424
Attorneys for Menu Foods, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MARGARET PICUS, an individual; on behalf of herself and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WAL-MART STORES, INC.; *et al.*<br><br>Defendants. | Case No.: CV-5-00682-PMP-LRL<br><br>(ORAL ARGUMENT REQUESTED) |

## MOTION OF DEFENDANT MENU FOODS, INC. TO DISMISS THE COMPLAINT

Pursuant to F.R.C.P. 12(b)(6), Defendant Menu Foods, Inc. ("Menu") hereby moves the Court to dismiss the Complaint for failure to state a claim upon which relief can be granted. As grounds for this motion, Menu states as follows:

Because the pet food at issue was undeniably manufactured in the United States, the inclusion of the words "MADE IN USA" cannot, as a matter of law, constitute a deceptive representation of geographic origin under Nev. Rev. Stat. § 598.0915. Thus, Count I of the Complaint fails to state a claim for relief under that statute.

In addition, the named plaintiff, a Nevada resident who allegedly purchased the pet food at issue only in this state, lacks standing to assert a claim for relief under the laws of any jurisdiction other than Nevada. Moreover, Count I of the Complaint fails to adequately allege a cause of action under the laws of any other jurisdiction. Accordingly, Count I also must be dismissed to the extent it purports to state a claim for relief arising out of the laws of any state other than Nevada.

Count II, which purports to state a claim for fraud against all defendants, must be dismissed because it fails to allege with particularity each defendant's role in the alleged fraudulent scheme and therefore runs afoul of Rule 9(b) F.R.C.P.

Similarly, the claim for unjust enrichment in Count III must be dismissed because, given the voluntary recall of the pet food at issue, Plaintiff cannot establish a required element of her claim -- the retention of a benefit by Menu.

WHEREFORE, for the reasons set forth above, as more fully explained in the accompanying Memorandum of Points and Authorities, Menu Foods, Inc. respectfully requests

///

///

///

///

2

that the Complaint be dismissed in its entirety.

DATED this 5 day of July, 2007.

Respectfully submitted by:

ALAN W. WESTBROOK, ESQ.
Nevada Bar No. 6167
PERRY & SPANN
A Professional Corporation
1701 W. Charleston Blvd., #200
Las Vegas, Nevada 89102
Tel: (702) 870-2400
Fax:(702) 870-8220

OF COUNSEL:
Lucinda J. Bach, Esq.
Julie L. Schwartz, Esq.
DLA PIPER US, LLP
1200 Nineteenth Street, NW
Washington, DC 20036-2412
Tel: (202) 861-6256
Fax:(202) 689-7424
Attorneys for Menu Foods, Inc.

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MENU FOODS INC.'S MOTION TO DISMISS
CLASS ACTION COMPLAINT FOR FAILURE TO STATE A CLAIM**

Defendant, Menu Foods, Inc. (hereinafter "Menu") submits this Memorandum of Points and Authorities in Support of its Motion to Dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("F.R.C.P"). The Complaint purports to state a claim on behalf of a nationwide class of consumers who purchased Ol' Roy pet food bearing the words "MADE IN USA" on the label. Plaintiff claims that designation was deceptive because one ingredient in the pet food came from another

3

country. Tellingly, Plaintiff does not allege -- nor could she -- that the pet food at issue is <u>not</u> manufactured in the United States. Nor does she allege that any pet which consumed the food was injured. Rather, plaintiff bases this purported class action solely upon the injury she allegedly sustained from purchasing a product with a "MADE IN USA" label that contained one ingredient -- wheat gluten -- imported from China. (Complaint ¶ 10).

Relying solely upon a snippet of language from a Federal Trade Commission ("FTC") press release -- and ignoring the detailed regulations that govern such labeling under the Federal Trade Commission Act ("FTCA") -- Plaintiff argues that the presence of this single, imported ingredient in pet food manufactured in this country renders the "MADE IN USA" designation false and fraudulent. As explained below, the applicable regulations do not so provide. Moreover, it is well-established that there is no private right of action under the Federal Trade Commission Act.

Nonetheless, Plaintiff then attempts to import her incomplete and inaccurate recitation of the so-called FTC standard into Nevada's deceptive trade practices law relating to claims of geographic origin -- as well as those of all 49 other states. No law supports this unfounded attempt. Nor can the Nevada act reasonably be construed to outlaw the use of a true and accurate statement of geographic origin on a product label.

In addition, the sole named Plaintiff -- a Nevada resident who allegedly purchased Ol' Roy pet food in Nevada -- has no standing to assert a claim under the law of any other state. Nor can Nevada law be applied to the claims, if any, of consumers who purchased the product in other states. Contrary to plaintiff's conclusory allegations, the applicable statutes of even the

4

other states referenced in the Complaint are not "identical" to Nevada's law. In fact, they conflict in important ways.

Plaintiff's purported claim for fraud against all defendants utterly fails to comply with the requirements of F.R.C.P. 9(b), by failing to specify in any way Menu's role in the alleged "fraud." Accordingly, it must be dismissed.

Plaintiff's final cause of action for unjust enrichment is also fatally flawed. The Complaint acknowledges that the pet food at issue was voluntarily recalled and reimbursement offered to purchasers. (Complaint ¶ 12). Given this voluntary recall and offer of reimbursement, plaintiff cannot establish an essential element of unjust enrichment -- retention of the benefit in question.

For all of the reasons set forth above, as explained in detail below, the Complaint fails to state a claim for which relief can be granted and therefore must be dismissed.

## LEGAL ARGUMENT

A Rule 12(b)(6) motion tests the legal sufficiency of a complaint and authorizes dismissal where the allegations, even if true, fail to state a claim for which relief may be granted. As the United States Supreme Court recently explained:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed allegations, . . . a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all of the allegations in the complaint are true (even if doubtful in fact).

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (1007), citing 5 C. Wright and A. Miller, Federal Practice and Procedure, § 1216, pp. 235-36 (3d ed. 1004) ("The pleading must

5

contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"); *see also In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."); *Balisturi v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory"); *Clegg v. Cult Awareness Network*, 18 F.3d 752 (9th Cir. 1994) (court considering a Rule 12(b)(6) motion "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged.").

### A. Plaintiff has No Private Right of Action Under the Federal Trade Commission Act.

Although the numbered Counts of the Complaint seek relief under state statutory and common law, the Complaint nonetheless alleges violations of the FTCA and seeks a declaration that Defendants violated "federal" and state law. (*See* Ad damnum clause, ¶ 3). Similarly, Paragraph 22(b) lists as one of the questions of law presented by this case: "Whether the representations or designations of geographic origin in connection with Ol' Roy brand pet food products violated 15 U.S.C. § 45(a)" -- the FTCA provision relating to geographic origin. *See also* Complaint, ¶ 23. Plaintiff also misleadingly references the FTC regulations governing "Made in USA" and purports to summarize their requirements. (Complaint, ¶ 8).[1]

---

[1] Plaintiff purports to quote the FTC standards governing "Made in USA" designations. In fact, however, the Complaint cites only snippets of language from an FTC press release and ignores the governing regulations and applicable FTC policy pronouncements. (*See* Complaint, ¶ 8.) Those materials explain that, as a threshold matter, for a product to be considered "all or virtually all" made in the USA, the final assembly or processing must take place in the United States. Enforcement Policy on U.S. Origin Claims, 62 Fed. Reg. 63,768 (Dec. 2, 1997). Beyond this minimum threshold, the "Commission will consider other factors, including but not limited

Notwithstanding Plaintiff's attempts to imply otherwise, it was established 33 years ago that: (1) the FTCA is enforced exclusively by the Federal Trade Commission; and (2) plaintiff has no private right of action under the Act. *Holloway v. Bristol-Meyers Corp.*, 485 F.2d 986, 989 (D.C. Cir. 1973); *Am. Airlines v. Christensen*, 967 F.2d 410, 414 (10th Cir. 1992); *Carlson v. Coca-Cola Co.*, 483 F.2d 279, 280 (9th Cir. 1973); *United States v. Phillip Morris Inc.*, 263 F. Supp. 2d 72, 78 (D.D.C. 2003). Nor can Plaintiff circumvent this well-established rule by styling her action as one seeking declaratory relief that Defendants' conduct violated the FTCA. *Floersheim v. Engman*, 494 F.2d 949, 954 (D.D.C. 1973) (action for declaratory judgment is not authorized by the Federal Trade Commission Act). Consequently, Plaintiff has no legally cognizable claim under the Federal Trade Commission Act, and is not entitled to declaratory relief under the Act. Nor can she recover for claimed violations of that federal statute.

**B.  Count I Fails to State a Claim for Relief Under The Nevada Deceptive Trade Practices Act.**

Count I of the Complaint purports to state a claim for relief under the Nevada Deceptive Trade Practices Act ("DTPA"). Section 598.0915 of that statute defines a deceptive trade practice to include the use of "deceptive representations or designations of geographic origin in connection with goods or services for sale or lease."

---

(Continued)
to the portion of the product's total manufacturing costs that are attributable to U.S. parts and processes; and how far removed from the finished product any foreign content is." *Id.* at 63,769. Thus, under the FTC standard, "there is no bright line rule and consideration should be given to (1) location of final assembly; (2) the portion of total manufacturing costs assigned to the United States; and (3) the degree of removal of the foreign input from the finished product." *New Colt Holding Corp. v. RJG Holdings of Fla., Inc.*, 312 F. Supp. 2d 195, 235 (D. Conn. 2004).

7

Plaintiff has utterly failed to allege the use of a deceptive representation or designation of geographic origin as to the pet food at issue. As plaintiff well knows, that pet food was manufactured in the United States. Indeed, the Complaint references the 2007 voluntary recall of Ol' Roy brand pet food. (Complaint ¶ 12). Those recall notices unequivocally state that the Menu pet food recalled was manufactured in the United States. (Ex. A.).[2] The gravaman of Plaintiff's Complaint is that the existence of a single imported ingredient in pet food manufactured in the United States renders the "MADE IN USA" designation deceptive.

However, as a matter of law, the Nevada statute is not susceptible of such a sweeping construction. *Larder v. Warden*, 121 Nev. 682, 120 P.3d 1164, 1167 (Nev. 2005) ("Statutory interpretation is a question of law. . . . When the language of a statute is clear, we will ascribe to the statute its plain meaning and not look beyond its language."); *Nevada Div. of Ins. v. State Farm*, 116 Nev. 290, 995 P.2d 482, 485 (Nev. 2000) ("Where the language of a statute is plain and unambiguous, and its meaning clear and unmistakable, there is no room for construction, and the courts are not permitted to search for its meaning beyond the statute itself."). The plain language of the statute -- which has not been construed by Nevada courts -- simply cannot be read to outlaw true and accurate statements on a product label. The common sense meaning of the words "MADE IN USA" is that the product is manufactured in the United States. The pet

---

[2] Pursuant to F.R.C.P. 10C, statements in a pleading may be adopted by reference in a different part of the same pleading or in any motion. On a motion to dismiss, the court can consider documents that are "referred to in the plaintiff's complaint and are central to her claim. *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *Venture Asso. Corp. v. Zenith*, 987 F.2d 429, 431 (7th Cir. 1993). If a defendant offers such a document, the court may treat it as part of the Complaint and thus may assume its contents are true for purposes of a motion to dismiss pursuant to Rule 12(b)(6). *U.S. v. Ritchie*, 342 F.3d at 908 (9th Cir. 2003); *Venture*, 987 F.2d at 431; *Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) (If the appended document reveals facts which foreclose recovery as a matter of law, dismissal is appropriate.).

8

food in question was undeniably manufactured in this country. There is nothing deceptive about a label stating that simple fact. The Nevada DTPA cannot be construed to prohibit inclusion of a true statement on a product label.

Accordingly, Count I should be dismissed for failure to state a claim under the Nevada DTPA.

### C. Count I Fails to State a Claim for Relief Under the Law of Any State Other Than Nevada.

Although the Complaint is nominally styled as a "nationwide" class action, there is only one named plaintiff before the Court at this time, and the adequacy of the Complaint must be judged by reference to that plaintiff. *Bailey v. Patterson*, 369 U.S. 31, 32 (1962); *Donald v. University of Mississippi*, 354 F. Supp. 266, 269 (N.D. Miss., W.D. 1973). The sole named plaintiff, Margaret Picus, is allegedly a resident of Nevada who purchased Ol' Roy brand pet food at a Wal-Mart store in Henderson, Nevada. (Complaint, ¶ 13). Yet Count I purports to state a claim, not only under the Nevada Deceptive Trade Practices Act, but also under "similar statutes in other states." (*See* Count I, p. 12). However, the Complaint utterly fails to allege sufficient facts to permit the assertion of claims arising out of consumer protection statutes in states other than Nevada.

#### 1. Plaintiff Lacks Standing to Assert Claims Under Other State Laws.

Plaintiff bears the burden of establishing standing, and this plaintiff has failed to do so. Plaintiff is not alleged to have any connection to any state other than Nevada or to have sustained injury in any state other than Nevada. Thus, this plaintiff cannot possibly have -- nor can she allege -- sufficient connections with any other state to invoke the protections of their consumer laws.

9

Federal standing requires an allegation of a present or immediate injury in fact, such that the plaintiff has "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues." *Phillips Petroleum v. Shutts*, 472 U.S. 797, 804 (1985). Injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). There also must be some causal connection between the asserted injury and the challenged action ("causation"), and the injury must be of the type "likely to be redressed by a favorable decision." ("redressability"). *Phillips*, 472 U.S. at 804. Plaintiff has not, and cannot allege injury in fact, causation or redressability under the laws of any state other than Nevada.

The party invoking federal jurisdiction bears the burden of establishing all three of the above elements. *Phillips*, 472 U.S. at 804 (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990) and *Warth v. Seldin*, 422 U.S. 490, 508 (1975)). Because standing is "an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Phillips*, 472 U.S. at 804. Plaintiff has not and cannot allege the facts necessary to establish each element of standing under the laws of any state other than Nevada.

Even where injury in fact, causation, and redressability are shown, there may be additional "prudential limitations on standing . . . because the judiciary seeks to avoid deciding questions of broad social import where no individual rights would be vindicated and to limit access to the federal courts to those litigants best suited to assert a particular claim." *Phillips*,

10

472 U.S. at 804. Prudential standing requirements include: "[T]he general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Allen v. Wright*, 468 U.S. 737, 751 (1984).

In the class action context, plaintiff cannot obtain standing to assert claims under the laws of states other than Nevada by merely purporting to represent a class of unspecified individuals who may themselves have standing to assert claims in other states. *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) (stating, with respect to the standing requirement in Article III of the U.S. Constitution, that "if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class"). As the U.S. Supreme Court aptly stated:

> a named plaintiff cannot acquire standing to sue by bringing his action on behalf of others who suffered injury which would have afforded them standing had they been named plaintiffs; it bears repeating that a person cannot predicate standing on injury which he does not share. Standing cannot be acquired through the back door of a class action.

*Allee v. Medrano*, 416 U.S. 802, 828-29 (1974); *see also Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) ("That a suit may be a class action, however, adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'") (citing *Warth v. Seldin*, 422 U.S. at 502).

11

The Complaint has not -- and cannot -- allege any of the necessary elements of standing under laws other than Nevada's. Plaintiff, who is alleged to have purchased the product only in Nevada, has alleged no connection to any other state, has sustained no injury in fact under the laws of any other state, and has no personal stake in the outcome under those laws. Furthermore, prudential standing limitations should act to preclude this plaintiff from asserting the rights of consumers in other states, governed by different laws. Moreover, plaintiff may not use a purported class action as a "back door" to acquire standing that she does not possess.

### 2. Count I Fails to State a Claim for Relief Under the Laws of States Other Than Nevada.

Plaintiff also has utterly failed to allege the necessary elements of a claim under the laws of the other states referenced in the Complaint. Other than the sweeping, conclusory allegation that all states have a DTPA that mirrors Nevada's (Complaint, ¶¶ 23, 27, 30), Plaintiff has not alleged that Menu's conduct is unlawful under the law of other states. Moreover, Plaintiff's assertion that every state's law is identical to Nevada's is belied even by the "examples" listed in the complaint. The applicable California Business & Professions Code provisions are explicitly limited to sales <u>in California</u>. Calif. Bus. & Prof. Code § 17533.7.[3] Thus, that statute cannot be applied to a sale that took place in Nevada. California law also requires notice and a demand that the defendant "repair, replace, or otherwise rectify the goods" prior to commencement of an action for damages. Cal. Civ. Code § 1782(a). California law also precludes an action for

---

[3] Plaintiff refers to laws of other states, including California, that "prohibit the use of deceptive representations regarding the geographic origin of products." (Complaint, ¶ 27.) Although not explicitly cited in the complaint, California Business & Professions Code section 17533.7 applies to products labeled "Made in U.S.A." This provision explicitly applies only to the sale of such products in the State of California. <u>Id.</u>

12

damages if "an appropriate correction, repair, replacement or other remedy is given . . . to the consumer." Cal. Civ. Code § 1782(b).

Similarly, under Alabama law the remedies available under the deceptive trade practices act and common law and other statutory remedies are "mutually exclusive." CODE OF ALA § 8-19-15. Arkansas specifically exempts from its deceptive trade practices act activities which are subject to and in compliance with any FTC rule, order, or practice. ARK STAT. ANN. § 4-88-101.

In sum, contrary to plaintiff's bald assertions, state statutes prohibiting deceptive trade practices clearly are not identical in all fifty states. Even if plaintiff had standing to assert a claim under the laws of those states, plaintiff has not plead the necessary elements of such claims.

### 3. Nevada Law Cannot Be Applied to Purchases in Other States.

Nor can Nevada law be applied to the purported claims of unnamed "class" members in other states. *See BMW of Am. v. Gore*, 517 U.S. 559, 571 (1996) ("[n]o State can Legislate except with reference to its own jurisdiction. . . . Each State is independent of all others in this particular.") (internal quotations and citation omitted). As stated in *Phillips*, the forum state "must have a significant contact or a significant aggregation of contacts" to the claims asserted by each member of the plaintiff class to ensure that application of the forum state's law is not unfair." 472 U.S. at 821-22. Moreover, a party has a right to have his or her claims governed by the state law applicable to his or her particular case. *See id.* As the Supreme Court observed with respect to state laws governing the sale of automobiles:

> No one doubts that a State may protect its citizens by prohibiting deceptive trade practices. . . . But the States need not, and in fact

13

> do not, provide such protection in a uniform manner. . . . The result is a patchwork of rules representing the diverse policy judgments of lawmakers in 50 States.

*Id.* at 569-70.

Not surprisingly, state consumer fraud laws also vary. As one court observed: "Both consumer fraud and unfair competition laws of the states differ with regard to the defendant's state of mind, type of prohibited conduct, proof of injury-in-fact, available remedies, and reliance, just to name a few differences." *In re Prempro Prods. Liab. Litig.*, 230 F.R.D. 555, 564 (E.D. Ark., W.D. 2005). As outlined above, the laws of even the handful of other states referenced in the Complaint are not uniform. There is no reason to believe that statutes in the other 45 states prohibiting deceptive practices relating to the geographic origin of consumer products are any less variable, nor has plaintiff sufficiently pled as much.

For that reason, Nevada cannot "impose its own policy choice on neighboring States," or punish a defendant "for conduct that was lawful where it occurred and that had no impact on [Nevada] or its residents." *Gore*, 517 U.S. at 571, 573.

Accordingly, Count I should be dismissed to the extent that it purports to state a claim under the law of states other than Nevada because this plaintiff lacks standing to assert such claims and has failed to allege a cause of action under the laws of other jurisdictions. Similarly, to the extent Count I seeks to apply the Nevada DTPA to purchases outside of Nevada, it is also fatally flawed and must be dismissed.

### D. Count II Must be Dismissed for Failure to Plead Fraud with Particularity Against Menu.

Count II of the Complaint purports to state a cause of action for fraud against all defendants. However, in failing to specify in any way Menu's role in the alleged fraud, Count II

14

runs afoul of F.R.C.P. 9(b), which requires that allegations of fraud be alleged with particularity.[4]

Although the Complaint clearly identifies the specific misrepresentation at issue ("Made in USA") (Complaint, ¶ 39(d)), plaintiff fails to identify any defendant's role in the alleged "fraudulent scheme." Indeed, Paragraph 39(a) of the Complaint, which purports to delineate "who" was involved in the fraud, lumps all four defendants together, and includes no facts whatsoever about any individual defendant's role in the allegedly fraudulent labeling.

Such "omnibus" allegations of fraud as to multiple defendants clearly fail to satisfy Rule 9(b). As the U.S. District Court for the Southern District of California stated in *Lubin v. Sybedon Corporation*, 688 F. Supp. 1425, 1443 (S.D. Cal. 1988): "Fraud allegations may not rely on blanket references to conduct of 'defendants and each of them,' but must instead inform each defendant of the conduct which constitutes the alleged violation." In *Lubin*, the court held that because the complaint did not "differentiate[ ] among the defendants' disparate responsibilities for the statements, . . . it cannot survive this Rule 9(b) challenge." *See also Polar Int'l Brokerage Corp. v. Reeve*, 108 F. Supp. 225, 237 (S.D.N.Y. 2000) ("It is well-settled that '[w]here multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of its alleged participation in the fraud. . . . The requirements of Rule 9(b) are not satisfied by a complaint in which defendants are clumped together in vague allegations."); *Pallickal v. Tech. Int'l Ltd.*, 1996 WL 153699 at *1 (S.D.N.Y. Apr. 3, 1996) ("Where there are multiple defendants, a complaint must identify which defendant is responsible

---

[4] To the extent Counts II and III seek to impose Nevada law upon claims arising in other states, they also suffer from the same defects as Count I. The elements of a claim for fraud and unjust enrichment under Nevada's common law are not alleged to be identical to the law in other jurisdictions. In fact, they are materially different. *See, e.g., In re Prempro*, 230 F.R.D. at 564.

for which act."); *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants'"); *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990) (affirming dismissal with prejudice because the complaint was "bereft of any detail concerning who was involved in each allegedly fraudulent activity . . . the complaint lump[ed] all the defendants together and [did] not specify who was involved in what activity.").

Accordingly, Count II must be dismissed as to Menu for failure to specify Menu's role in the alleged fraudulent scheme.

### E. Count III Fails to State a Cause of Action for Unjust Enrichment.

An essential element of a claim for unjust enrichment is the defendant's retention of a benefit unjustly conferred. *G.K. Las Vegas Ltd. P'ship v. Simon Prop. Group, Inc.*, 460 F. Supp. 2d 1246, 1262 (D. Nev. 2006); *Topaz Mut. Co., Inc. v. Marsh*, 108 Nev. 845, 856 (Nev. 1992). However, plaintiff's affirmative allegation that the pet food products at issue here were voluntarily recalled and refunds offered establishes that there was no retention of benefits stemming from the sale of the products at issue.[5] For this reason, Count III must be dismissed for failure to state a claim.

///

---

[5] If the Court concludes that plaintiff has stated a claim under the Nevada DTPA – and for the reasons set forth above, it should not – the existence of a claim under that Act would establish that plaintiff has an adequate remedy at law. Existence of such remedy is also fatal to plaintiff's unjust enrichment claim.

16

## CONCLUSION

For the reasons set forth above the Complaint must be dismissed in its entirety for failure to state a claim upon which relief can be granted.

DATED this  5  day of July, 2007.

Respectfully submitted by:

*/s/ Alan W. Westbrook*

ALAN W. WESTBROOK, ESQ.
Nevada Bar No. 6167
PERRY & SPANN
A Professional Corporation
1701 W. Charleston Blvd., #200
Las Vegas, Nevada 89102
Tel: (702) 870-2400
Fax:(702) 870-8220

OF COUNSEL:
Lucinda J. Bach, Esq.
Julie L. Schwartz, Esq.
DLA PIPER US, LLP
1200 Nineteenth Street, NW
Washington, DC 20036-2412
Tel: (202) 861-6256
Fax:(202) 689-7424
Attorneys for Menu Foods, Inc.

17

## CERTIFICATE OF MAILING

I HEREBY CERTIFY that on the 5th day of July, 2007, a true and correct copy of the foregoing **MOTION OF DEFENDANT MENU FOODS, INC. TO DISMISS THE COMPLAINT** as follows:

( X )   by placing same to be deposited for mailing in the U.S. Mail, in a sealed envelope upon which first class postage was prepaid in Las Vegas, NV; and/or

(   )   to be hand-deli8vered to the attorneys listed below at the address indicated below:

Robert B. Gerard, Esq.
Lawrence T. Osuch, Esq.
GERARD & OSUCH, LP
2840 South Jones Blvd.
Building D, Suite 4
Las Vegas, NV 89146
Attorneys for Plaintiffs

Norman Blumenthal, Esq.
BLUMENTHAL & NORDREHAUG
2255 Calle Clara
La Jolla, CA 92037
Attorneys for Plaintiffs

James E. Whitmire, III, Esq.
Brian W. Boschee, Esq.
SANTORO, DRIGGS, WALCH,
KEARNEY, JOHNSON & THOMPSON
400 South Fourth St., Third Floor
Las Vegas, NV 89101
Attorneys for Defendant
Wal-Mart Stores, Inc.

Dawn Grossman, Esq.
COZEN O'CONNER
601 So. Rancho Dr., Suite C-20
Las Vegas, NV 89106
Attorney for Defendant Del Monte Foods Co.

Nicholas M. Wieczorek, Esq.
3980 Howard Hughes Pkwy, Suite 400
Las Vegas, NV 89169
Attorney for Defendant Chemnutra, Inc.

Kurt R. Bonds, Esq.
ALVERSON, TAYLOR, MORTENSEN & SANDERS
7401 West Charleston Blvd.
Las Vegas, NV 89117
Attorneys for Defendant Sunshine Mills, Inc.

_/s/ Linda Cashum_
An Employee of PERRY & SPANN,
A Professional Corporation

18

# EXHIBIT "A"

| PRESS RELEASE | |
|---|---|
| **MENU FOODS INCOME FUND** | **Menu Foods Income Fund**<br>TSX:  MEW.UN  Stock Quote  Stock Chart<br><br>Other Recent News |

March 16, 2007

## Menu Foods Income Fund Announces Precautionary Dog and Cat Food Recall

TORONTO, ONTARIO--(CCNMatthews - March 16, 2007) -

NOT FOR RELEASE OVER US NEWSWIRE SERVICES

Attention Business/Financial Editors

Menu Foods Income Fund (the "Fund") (TSX:MEW.UN) today announced the precautionary recall of a portion of the dog and cat food it manufactured between December 3, 2006 and March 6, 2007. The recall is limited to "cuts and gravy" style pet food in cans and pouches manufactured at two of the Fund's United States facilities. These products are both manufactured and sold under private-label and are contract-manufactured for some national brands.

Over the past several days, the Fund has received feedback in the United States (none in Canada) raising concerns about pet food manufactured since early December, and its impact on the renal health of the pets consuming the products. Shortly after receipt of the first complaint, the Fund initiated a substantial battery of technical tests, conducted by both internal and external specialists, but has failed to identify any issues with the products in question. The Fund has, however, discovered that timing of the production associated with these complaints, coincides with the introduction of an ingredient from a new supplier. The Fund stopped using this ingredient shortly after this discovery and production since then has been undertaken using ingredients from another source.

At the same time, the Fund's largest customer, for which it manufactures on a contract basis, received a small number of consumer complaints and has initiated its own recall. Furthermore, for the time being, the customer has put future orders for cuts and gravy products on hold. This customer's cuts and gravy purchases in 2006 represented approximately 11% of the Fund's annual revenue.

"We take these complaints very seriously and, while we are still looking for a specific cause, we are acting to err on the side of caution" said Paul K. Henderson, President and CEO, Menu Foods. "We will do whatever is necessary to ensure that our products maintain the very highest quality standards."

While the number of complaints has been relatively small, Menu is taking this proactive step out of an abundance of caution, because the health and well-being of pets is paramount to the Fund.

In addition to changing suppliers, for production after March 6, the Fund has increased testing of all raw materials and finished goods. It is also working closely with regulatory authorities and its customers to learn more and will take whatever additional actions are appropriate. The Fund estimates that based on currently available information, this recall could cost between $30 million and $40 million, which will be financed from a combination of internally generated cash flow and bank credit facilities. Furthermore, the Fund is aggressively producing product, utilizing a different supplier for the ingredient in question, to replenish customers as quickly as possible.

In order to determine whether cat and dog food in their possession is subject to recall, consumers should refer to the list of brand names ("listed products") at www.menufoods.com/recall. This will be available by 6 a.m. Saturday March 17, 2007. Products not identified on the website can continue to be used.

Menu is the leading North American private-label/contract manufacturer of wet pet food products sold by supermarket retailers, mass merchandisers, pet specialty retailers and other retail and wholesale outlets. In 2006, the Fund produced more than one billion containers.

**CONTACT INFORMATION**

Menu Foods Income Fund

Menu Foods Income Fund
Consumers