UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

MARGARET PICUS, and all others similarly situated,

    Plaintiff,

v.

WAL-MART STORES, INC.; MENU FOODS INC.; DEL MONTE FOODS COMPANY; SUNSHINE MILLS, INC.; CHEMNUTRA, INC.; and DOES 1 through 100, inclusive,

    Defendants.

2:07-CV-00682-PMP-LRL
BASE FILE

2:07-CV-00686-PMP-LRL
2:07-CV-00689-PMP-LRL

O R D E R

    Presently before the Court is Defendants Wal-Mart Stores, Inc. and Sunshine Mills, Inc.'s Motion to Deny Class Certification (Doc. #58), filed on December 14, 2007. Plaintiff filed an Opposition (Doc. #59) on January 16, 2008. Defendants Wal-Mart Stores, Inc. and Sunshine Mills, Inc. filed a Reply (Doc. #62) on February 14, 2008. Defendants Menu Foods, Inc. and Del Monte Foods Company filed Joinders (Doc. #63 & #65) to the Motion to Deny Class Certification.

    Pursuant to this Court's Order (Doc. #69), Plaintiff filed a Supplemental Brief in Opposition to the Motion to Deny Class Certification (Doc. #70) on December 5, 2008. Defendants filed a Supplemental Brief in support of the Motion to Deny Class Certification (Doc. #75) on January 12, 2009.

///

## I. BACKGROUND

On April 30, 2007, Plaintiff Margaret Picus filed a class action in Nevada state court, alleging a scheme among Defendants to sell "Ol' Roy" brand pet food products to consumers as "Made in the USA," when in fact components were manufactured outside of the United States. (Am. Notice Removal Def. Wal-Mart, Stores, Inc. (Doc. #5) at 2 & Ex. A ["Compl."] ¶¶ 1, 9.) Plaintiff alleges the "Made in the USA" labels were in capital and bold lettering and were substantially the same on all Ol' Roy products sold to consumers at Wal-Mart stores throughout the United States. (Compl. ¶¶ 2-4.) However, Plaintiff claims Ol' Roy pet foods contained ingredients, specifically wheat gluten, which were manufactured in China. (Id. ¶¶ 5, 7.) Plaintiff originally asserted three claims against Defendants: (1) violation of the Nevada Deceptive Trade Practices Act ("NDTPA") and similar statutes in other states; (2) fraud; and (3) unjust enrichment. (Id. at 12-18.) Plaintiff sought relief on behalf of herself and all others similarly situated. (Id. at 18.)

In the Complaint, Plaintiff defined the proposed class as "all individuals in the United States who purchased one or more Ol' Roy brand pet food products prior to March 16, 2007." (Id. ¶ 21.) Plaintiff subsequently amended the class definition:

> All individuals in the United States who purchased one or more Ol' Roy brand pet food products designated as made in USA prior to March 16, 2007 and beginning on the date to be discovered when the Ol' Roy brand pet food was first mislabeled as made in USA. Excluded from this class are those persons who have received a full refund of their purchases of Ol' Roy pet food and those persons who have asserted a legal action in MDL 1850 or otherwise claim injury to their pet as a result of consumption of Ol' Roy brand pet food.

(Am. Compl. (Doc. #56).)

Defendant Wal-Mat Stores, Inc. removed the action to this Court on May 25, 2007. (Am. Notice Removal Def. Wal-Mart, Stores, Inc.) On June 21, 2007, the Court consolidated this case with two other cases. (Order (Doc. #15).) The Judicial Panel on Multidistrict Litigation conditionally transferred this case to the District of New Jersey for

consolidated pretrial proceedings in <u>In re Pet Foods Products Liability Litigation</u> ("MDL 1850"), but the transfer since has been vacated. 544 F. Supp. 2d 1378, 1379 n.1 (J.P.M.L. 2008). On November 18, 2008, the District of New Jersey approved a settlement in MDL 1850. <u>In re Pet Food Prods. Liab. Litig.</u>, No. 07-2867 (NLH), 2008 WL 4937632, at *27 (D.N.J. 2008) (unpublished).

Meanwhile, on October 12, 2007, this Court granted a partial motion to dismiss in this case, to the extent Plaintiff requested injunctive and other equitable relief under the NDTPA. (Order (Doc. #47) at 14.) Subsequently, Defendants moved to deny class certification of Plaintiff's proposed amended class. The Court deferred all discovery until ten days after resolution of this motion. (Order (Doc. #55).) The Court also ordered the parties to provide the Court supplemental briefing as to the material differences in state law for Plaintiff's deceptive trade practices, fraud, and unjust enrichment claims, as well as to the discovery necessary to determine the applicable law. (Order (Doc. #69) at 9-10.)

In her supplemental briefing and proposed First Amended Complaint ("Proposed FAC") attached thereto, Plaintiff eliminated her fraud and unjust enrichment claims, as well as limited the class to residents of Nevada, California, Colorado, Idaho, Illinois, Michigan, Ohio, and Oregon (the "Subject States") who purchased Ol' Roy pet food in the state in which they reside:

> All residents of California, Colorado, Idaho, Illinois, Michigan, Nevada, Ohio and Oregon who purchased one or more of the specified Ol' Roy pet food products designated as "Made in the USA" in the state in which they reside prior to March 16, 2007 and beginning on the date to be discovered when the Ol' Roy brand pet food was first mislabeled as "Made in the USA." ("Class Period") Excluded from this Class are those persons who have received a full refund of all their purchases of Ol' Roy Pet Food and those persons whose only purchases of Ol' Roy pet food products were Recalled Pet Food Products subject to the Order approving the settlement in MDL 1850.

(Pl.'s Supplemental Brief in Opp'n to Mot. to Deny Class Certification (Doc. #70), Decl. of Normal B. Blumenthal, Ex. 1 ["Proposed FAC"] ¶ 20.)

3

Plaintiff now argues the Court should deny Defendants' Motion to Deny Class Certification because the Subject States' statutes all expressly outlaw sales of products mislabeled as to geographic origin. Thus, Plaintiff contends, no conflicts of law remain, no discovery is required to determine the applicable state law, and the Court can apply Nevada law to the class action. Plaintiff also requests to file the Proposed FAC.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 23 requires the Court to determine whether to certify a class "[a]t an early practicable time after a person sues or is sued as a class representative."[1] Fed. R. Civ. P. 23(c)(1)(A). In some cases, discovery is necessary to determine the existence of a class. Kamm v. Cal. City Dev. Co., 509 F.2d 205, 210 (9th Cir. 1975). Indeed, "dismissal of class allegations at the pleading stage should be done rarely and . . . the better course is to deny such a motion because the shape and form of a class action evolves only through the process of discovery." In re Wal-Mart Stores, Inc. Wage & Hour Litig., 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007) (quotation omitted); see also Doninger v. Pac. Nw. Bell, Inc., 564 F.2d 1304, 1313 (9th Cir. 1977) ("[T]he better and more advisable practice for a District Court to follow is to afford the litigants an opportunity to present evidence as to whether a class action [is] maintainable.").

However, "[i]f, as a matter of law, a class cannot be certified in this adversary proceeding, it would be a waste of the parties' resources and judicial resources to conduct discovery on class certification." Walls v. Wells Fargo Bank, N.A. (In re Walls), 262 B.R. 519, 523 (Bankr. E.D. Cal. 2001); see also Vinole v. Countrywide Home Loans, Inc., 246 F.R.D. 637, 639 (S.D. Cal. 2007) ("[A] defense-driven determination of class certification is appropriate when awaiting further discovery will only cause needless delay and expense."

---

[1] Although the plaintiff typically moves for class certification, the parties do not dispute that a defendant can move to deny class certification before a plaintiff moves for certification. Rule 23 does not preclude this. Vinole v. Countrywide Home Loans, Inc., 246 F.R.D. 637, 639 (S.D. Cal. 2007).

(quotation omitted)). Although it would be improper to require a plaintiff to establish she can maintain a class before she attempts to do so, it would be appropriate to dismiss the class allegations if the plaintiff does not allege facts sufficient to make out a class. Bessette v. Avco Fin. Servs., Inc., 279 B.R. 442, 450 (D.R.I. 2002). Accordingly, when a party moves to deny class certification prior to any discovery, the Court construes it under the legal standards for a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss. Walls, 262 B.R. at 524; Blihovde v. St. Croix County, Wis., 219 F.R.D. 607, 614 (W.D. Wis. 2003) ("[W]hen there has been no discovery and the defendants challenge class certification on the basis of the allegations in the complaint only, the proper standard is the same as a motion to dismiss for failure to state a claim.").

Under the motion to dismiss standard, the Court "must construe the complaint in the light most favorable to the plaintiff and must accept all well-pleaded factual allegations as true." Siaperas v. Mont. State Comp. Ins. Fund, 480 F.3d 1001, 1003 (9th Cir. 2007) (quotation omitted). Although a plaintiff's factual allegations need not be detailed, a plaintiff must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007). Dismissal is proper only if no cognizable legal theory exists or the plaintiff has alleged insufficient facts to support a cognizable legal theory. Siaperas, 480 F.3d at 1003. "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" Hydrick v. Hunter, 500 F.3d 978, 985 (9th Cir. 2007) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

## III. CLASS CERTIFICATION

Federal Rule of Civil Procedure 23 governs class actions. Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1186, amended by 273 F.3d 1266 (9th Cir. 2001). The Court has broad discretion to determine whether to certify a class and whether to revisit that certification throughout the legal proceedings before this Court. Armstrong v. Davis, 275

F.3d 849, 871 n.28 (9th Cir. 2001). The party seeking class certification bears the burden of establishing that the proposed class meets the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. Lozano v. AT&T Wireless Servs., Inc., 504 F.3d 718, 724 (9th Cir. 2007); Staton v. Boeing Co., 327 F.3d 938, 953 (9th Cir. 2003). The party seeking class certification also bears the burden of satisfying at least one of the three conditions in Rule 23(b): (1) separate actions would create a risk of inconsistent outcomes or impede non-parties' ability to protect their interests; (2) injunctive relief is appropriate because the party opposing the class has acted on grounds that apply to the entire class; or (3) common questions of law or fact predominate and a class action is a superior method of adjudication. Fed. R. Civ. P. 23(b); Lozano, 504 F.3d at 724.

Here, Defendants argue Plaintiff's proposed class fails to qualify as the third type of class action under Rule 23(b). Under Rule 23(b)(3), a class action may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b). Although predominance and superiority are interrelated, the Court examines them separately. Zinser, 253 F.3d at 1189.

In her supplemental brief, Plaintiff argues common issues predominate because all of the Subject States prohibit "deceptive representations or designations of geographic origin in connection with goods or services" and allow private claims for damages. She also argues the Subject States do not require individual proof of deception or reliance. Plaintiff contends a class action is superior because the small amount at stake makes individual litigation impossible. Further, Plaintiff argues the Court should apply Nevada law to the entire class because no material conflicts exist between the Subject States' laws. Alternatively, Plaintiff contends that applying the Subject States' laws to Defendants' uniform conduct would not impair predominance or manageability.

Defendants respond that individualized issues as to causation, reliance, and statutes of limitations predominate and defeat certification. Defendants also contend a class action is not the superior means of litigation because individual issues would have to be resolved through numerous mini-trials. Finally, Defendants argue the laws of the Subject States conflict materially, thereby defeating predominance, complicating manageability, and prohibiting the Court from applying Nevada law to all class members.

### A. Predominance

With regard to predominance under Rule 23(b)(3), common questions of law and fact must predominate over individualized issues. Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 615 (1997). "'The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc., 244 F.3d 1152, 1162 (9th Cir. 2001) (quoting Amchem Prods., 521 U.S. at 623). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis." Id. (quotation omitted). However, when individual issues predominate, "the economy and efficiency of class action treatment are lost and the need for judicial supervision and the risk of confusion are magnified." Zinser, 253 F.3d at 1189 (quotation omitted).

Although the Court must determine which state's law applies before certifying the proposed class, for this motion to deny class certification, the Court first will consider whether common issues predominate if, as Plaintiff argues, only Nevada law applies.

#### 1. Nevada Law

Under the NDTPA, "[a]n action may be brought by any person who is a victim of consumer fraud." Nev. Rev. Stat. § 41.600(1). If the claimant prevails, the Court shall award that party "[a]ny damages that he has sustained," as well as costs and attorney's fees.

Id. § 41.600(3). Actionable consumer fraud includes deceptive trade practices as defined in Nevada Revised Statutes §§ 598.0915 to 598.0925. Id. § 41.600(2)(e). Deceptive trade practices include when a person, in the course of his business or occupation, "[u]ses deceptive representations or designations of geographic origin in connection with goods or services for sale or lease." Id. § 598.915(4).

The Nevada Supreme Court has not specified the elements of an NDTPA private cause of action, including whether causation and reliance are required. "Where the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it." Giles v. Gen. Motors Acceptance Corp., 494 F.3d 865, 872 (9th Cir. 2007) (quotation omitted). "In answering that question, this court looks for 'guidance' to decisions by intermediate appellate courts of the state and by courts in other jurisdictions." Id. (quotation omitted). The Court looks to Nevada rules of statutory interpretation to determine the meaning of a Nevada statute. See In re First T.D. & Inv., Inc., 253 F.3d 520, 527 (9th Cir. 2001).

Where a statute is unambiguous, the Court does not look beyond the statute's plain language. Washoe Med. Ctr. v. Second Judicial Dist. Court, 148 P.3d 790, 793 (Nev. 2006) (en banc). However, if the statute is ambiguous, i.e., it is susceptible to more than one interpretation, the Court looks beyond its plain meaning. Id. Legislative intent controls the construction of an ambiguous statute, and the Court looks to legislative history for guidance. Id. The Court also considers "the policy and spirit of the law and will seek to avoid an interpretation that leads to an absurd result." Id. (quotation omitted).

Under the NDTPA's plain language, to establish a private cause of action, a plaintiff must show a defendant engaged in a consumer fraud of which the plaintiff was a victim. Because a prevailing party may recover "damages that he has sustained," a plaintiff also must demonstrate damages. Implicit in that language is a causation requirement. See, e.g., Clark County Sch. Dist. v. Richardson Constr., Inc., 168 P.3d 87, 96 (Nev. 2007)

(stating causation is an essential element of a tort claim); Buckland v. Threshold Enters., Ltd., 66 Cal. Rptr. 3d 543, 550 (Ct. App. 2007) (concluding statutory language that consumer "who suffers any damage as a result of the use or employment" of a deceptive act demonstrates relief is "specifically limited to those who suffer damage, making causation a necessary element of proof" (quotations omitted)). Under Nevada Revised Statutes § 41.600(3), a party can recover only those damages sustained as a result of the defendant's act of consumer fraud.

Some courts also read a reliance requirement into the causation element. In Oregon, causation requires proof of the consumer's reliance-in-fact when an alleged violation is an affirmative misrepresentation, as opposed to a failure to disclose. Feitler v. Animation Celection, Inc., 13 P.3d 1044, 1047 (Or. Ct. App. 2000); see also Sanders v. Francis, 561 P.2d 1003, 1006 (Or. 1977) (Reliance is required where the "plaintiff claims to have acted upon a seller's express representations."). California similarly requires a plaintiff suing for misrepresentations in connection with a sale to "prove she relied on a material misrepresentation." Cattie v. Wal-Mart Stores, Inc., 504 F. Supp. 2d 939, 946 (S.D. Cal. 2007). The plaintiff also must allege the misrepresentation was material as to her, i.e., "'that without the misrepresentation, [P]laintiff would not have acted as [s]he did.'" Id. (alterations in original) (quoting Caro v. Proctor & Gamble Co., 22 Cal. Rptr. 2d 419, 433 (Ct. App. 1993)). Although Illinois does not require actual reliance, a plaintiff must show proximate causation, i.e., that she was in some manner deceived. Oliveira v. Amoco Oil Co., 776 N.E.2d 151, 164 (Ill. 2002); Hanson-Suminski v. Rohrman Midwest Motors, Inc., 898 N.E.2d 194, 203 (Ill. App. Ct. 2008).

The Court therefore concludes that for a private NDTPA claim for damages, the Nevada Supreme Court would require, at a minimum, a victim of consumer fraud to prove

that (1) an act of consumer fraud by the defendant (2) caused (3) damage to the plaintiff.[2] Because Defendants here allegedly made an affirmative misrepresentation and Plaintiff could prove she sustained damages as a result of Defendants' alleged misrepresentation only by demonstrating she relied upon a "Made in the USA" label, the Court concludes causation includes reliance in this case. See Poulos v. Caesars World, Inc., 379 F.3d 654, 665 (9th Cir. 2004) (concluding "reliance provide[d] a key causal link" to "connect the dots" between the alleged misrepresentations and the class representatives' injury in that particular Racketeer Influenced and Corrupt Organizations Act ("RICO") action). Considering these elements, the Court now must decide if common issues predominate in this class action under the NDTPA.

### a. Act of Consumer Fraud

Plaintiff alleges Defendants committed an act of consumer fraud by "ma[king] deceptive representations or designations of geographic origin in connection with Ol' Roy brand pet food products." (Proposed FAC ¶ 21(b)(i).) The common issues Plaintiff alleges in connection with this act include whether Defendants represented Ol' Roy pet foods to have been "Made in the USA," whether the pet food actually was "Made in the USA," whether Defendants retained revenue acquired through the alleged scheme to mislead customers, and whether Defendants engaged in a uniform corporate policy of marketing Ol' Roy pet food as "Made in the USA." (Id. ¶ 21(b).) Although the case includes separate types of Ol' Roy pet food and different Defendants, each Defendant's acts in furtherance of the alleged scheme are common as to all of the putative class members.

### b. Damages

The Proposed FAC alleges a common issue exists as to "[w]hether the members of the Class sustained damage as a result of the Defendants' conduct." (Id. ¶ 21(b)(vi).)

---

[2] Defendants note it is unclear whether the NDTPA requires intent. Although some states require intent, it is not necessary for the Court to decide if the Nevada Supreme Court would agree.

Although common issues might exist as to how much damage a customer incurred per item of Ol' Roy pet food purchased, individualized issues exist as to, for example, how many items of Ol' Roy pet food a particular class member purchased. Nevertheless, individualized issues as to damages, alone, are insufficient to defeat predominance. Wiener v. Dannon Co., — F.R.D. —, 2009 WL 383650, at *11 (C.D. Cal. 2009); see also Blackie v. Barrack, 524 F.2d 891, 905 (9th Cir. 1975) ("The amount of damages is invariably an individual question and does not defeat class action treatment.").

### c. Causation and Reliance

In this case, establishing causation through reliance depends on whether each class member relied on the "Made in the USA" label. Although the Proposed FAC states consumers "generally believe" products "Made in the USA" are of a higher quality than those made elsewhere (Proposed FAC ¶ 11), many consumers purchasing Ol' Roy pet food may not have seen the "Made in the USA" label. For those consumers, reliance cannot be established. For consumers who did see the label, they may or may not have relied upon the representation that the product was made in the United States. In fact, the choice to purchase Ol' Roy products could be based on a variety of factors unrelated to the "Made in the USA" label, such as price, convenience, or a pet's preference for the product. Although some consumers could have purchased the Ol' Roy pet food solely or partially based on the belief that it was made in the USA, any number of reasons exist as to why a particular class member purchased an Ol' Roy product.

However, some courts permit a class-wide inference of reliance. A reliance inference arises under the California Consumer Legal Remedies Act ("CLRA") if a defendant made a material misrepresentation to all class members. Wiener, 2009 WL 383650, at *8 (citing Vasquez v. Superior Court, 484 P.2d 964, 973 (Cal. 1971)). "'[M]ateriality means that without the misrepresentation, the plaintiff would not have acted as he did.'" Id. (quoting Caro, 22 Cal. Rptr. 2d at 433). In Wiener, the court inferred

11

1 reliance because misrepresentations concerning the clinically proven health benefits of
2 yogurt were displayed prominently on packaging, all class members must have seen the
3 packaging upon purchasing the yogurt, and the defendants pointed to no meaningful
4 differences with other yogurt, such as flavor or serving size, that might have influenced
5 consumer purchases. Id. at *9.

6 The United States Court of Appeals for the Ninth Circuit, in Poulos,
7 acknowledged a presumption of reliance sometimes is appropriate, although refusing to
8 apply a presumption of reliance to the class in that civil RICO action. Poulos, 379 F.3d at
9 666-67. The Court stated a presumption of reliance "typically has been applied in cases
10 involving securities fraud and, even then, the presumption applies only in cases primarily
11 involving a failure to disclose—that is, cases based on omissions as opposed to affirmative
12 misrepresentations." Id. (quotation omitted).

13 The Court concludes the Nevada Supreme Court would not permit an inference
14 of reliance under the circumstances of this case. Under the Ninth Circuit's holding, this
15 case involves neither securities nor a failure to disclose. Considering California's standard,
16 even if the "Made it the USA" label was identical on all Ol' Roy packaging, the Court
17 cannot conclude that without the geographic representation, the class members would not
18 have purchased the product. Contrary to Wiener, where the misrepresentation of health
19 benefits was the only difference between that yogurt and others, any number of differences
20 exist between Ol' Roy products and other brands that could have caused class members to
21 purchase Ol' Roy products. Because the reasons consumers purchased Ol' Roy over other
22 brands likely vary greatly, the Court will not presume reliance.

23 Accordingly, individualized issues as to reliance would have a significant effect
24 on this case. The Court would have to consider whether each class member relied on or
25 even saw the "Made in the USA" label when purchasing Ol' Roy products, as well as what
26 damage each class member incurred as a result of that reliance. Thus, individual issues of

reliance and damages predominate over the common issues related to Defendants' actions in allegedly misrepresenting the geographic origin of Ol' Roy products, thereby negating the efficiency of class treatment and increasing the risk of confusion. Applying Nevada law, Plaintiff's class in the Proposed FAC therefore fails as a Rule 23(b)(3) class as a matter of law.

### 2. Laws of Other States

Should a conflicts of law analysis require application of all of the Subject States' laws, Plaintiff argues common issues nonetheless predominate. However, at least some of the Subject States require an individualized showing as to causation and/or reliance. See, e.g., Gonzalez v. Proctor & Gamble Co., 247 F.R.D. 616, 624-25 (S.D. Cal. 2007) (Under California CLRA, "Plaintiff's allegations that a class of consumers, who may have seen all, some, or none of the advertisements that form the basis of Plaintiff's suit, does not allow an inference of common reliance or liability."); Oshana v. Coca-Cola Bottling Co., 225 F.R.D. 575, 586 (N.D. Ill. 2005) (concluding individual causation issues as to whether Coca-Cola's marketing played a role in each class member's decision to purchase fountain diet Coke and what each class member "heard, saw, or knew" precluded certification in Illinois Consumer Fraud Act action); Pearson v. Philip Morris, Inc., No. 0211-11819, 2006 WL 663004, at *5 (Or. Cir. 2006) (unpublished) (concluding that under Oregon Unlawful Trade Practices Act, class members must prove individual reliance on cigarette pack statements in purchasing decision). But see Dix v. Am. Bankers Life Assurance Co. of Fla., 415 N.W.2d 206, 209 (Mich. 1987) (concluding individualized proof of reliance is not necessary under Michigan Consumer Protection Act, but, instead, "[i]t is sufficient if the class can establish that a reasonable person would have relied on the representations").

Accordingly, if the Court were to apply the Subject States' laws, at least half of the Subject States (California, Illinois, Oregon, and Nevada) require individual proof as to reliance or causation. Even though Defendants' actions in labeling Ol' Roy pet food as

"Made in the USA" might be common to all class members, determining the individual reliance or causation of approximately half of the class would make class treatment inefficient and magnify the risk of confusion. The Court therefore concludes that, even if the Court applies the law of all of the Subject States, individual issues predominate and Plaintiff's putative class is not certifiable under Rule 23(b)(3) as a matter of law.[3]

### B. Superiority

Rule 23(b)(3) also requires the Court to determine whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In determining superiority, the Court considers four factors:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Id.; Zinser, 253 F.3d at 1190. "A consideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." Zinser, 253, F.3d at 1190 (quotation omitted).

The first factor weighs in favor of certification because each class members' damages presumably are very small, such as reimbursement for an Ol' Roy product a class member purchased because it was "Made in the USA." As for the second factor, it is unclear if many similar lawsuits are pending because the parties point to only one similar case and Defendants allegedly disclosed the misrepresentation only recently, in March 2007. Considering the third factor, it would be desirable to litigate Defendants' actions in

---

[3] Further, if the Court were to apply a law of a state not requiring reliance or permitting an inference of reliance in this case, Plaintiff, as a Nevada resident who purchased Ol' Roy pet food at a Wal-Mart in Nevada, could not represent the class. This provides another reason Plaintiff's class is not certifiable as a matter of law.

one forum. However, the class members are located throughout the eight Subject States, and some of those states have different legal requirements. Consequently, concentrating the litigation as to class members' reliance and damages is not necessarily efficient. Similarly, as to the fourth factor, the need to determine individual reliance and damages makes manageability of the action difficult. In effect, the Court would be forced to conduct mini-trials for each class member. A class action therefore is not the superior method of adjudication and the putative class fails as a Rule 23(b)(3) class.

Accordingly, because the putative class in the Proposed FAC fails as to predominance and superiority, the Court cannot certify the class under Rule 23(b)(3) as a matter of law.[4] The Court therefore will grant Defendants' Motion to Deny Class Certification. The Court also denies Plaintiff's request to file the Proposed FAC.

## IV. CONCLUSION

IT IS THEREFORE ORDERED Defendants Wal-Mart Stores, Inc. and Sunshine Mills, Inc.'s Motion to Deny Class Certification (Doc. #58) is hereby GRANTED.

DATED: March 16, 2009

_____
PHILIP M. PRO
United States District Judge

---

[4] The parties do not argue the putative class is certifiable under Rule 23(b)(1) or (b)(2).